IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AIMEE SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV-2:06-CV-00027-CSC |
| | ) |
| KENTUCKY FRIED CHICKEN, | ) |
| | ) |
| Defendant. | ) |

**<u>DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS, OR IN THE ALTERNATIVE,
STAY THE DISTRICT COURT PROCEEDINGS AND COMPEL
ARBITRATION</u>**

COMES NOW, Defendant KFC U.S. Properties, Inc.[1] (hereinafter "KFC"), by and through its undersigned attorneys, and respectfully submits this reply brief in response to Plaintiff's opposition to Defendant's Motion to Dismiss, or in the Alternative, Stay the District Court Proceedings and Compel Arbitration. The <u>only</u> relevant inquiry is whether the valid and otherwise enforceable arbitration agreements contained in either Exhibit 1 <u>or</u> 2 contain Plaintiff Aimee Smith's signature. Plaintiff's opposition does not deny that those signatures are hers and therefore has provided no evidence sufficient to deny Defendant's Motion.

---

[1] Defendant is incorrectly named in the style of the Complaint as Kentucky Fried Chicken.

**I.     Plaintiff Signed an Agreement to Arbitrate on Her Personnel File Jacket.**

KFC requires newly-hired employees to complete KFC's personnel file jacket. (Ex. 3, Aff. of Rose Brown., ¶ 5.) The jacket is a manila file folder, on the front and back of which numerous KFC policies or required agreements have been printed. (*Id.*) One of the several signatures required by the new employee on the jacket is one agreeing to arbitration of any employment dispute with KFC. Attachment A to Exhibit 3 contains copies of all of the sides of Plaintiff's personnel file jacket. One page of Attachment A is dated March 5, 2003, which was Plaintiff's date of hire with KFC. (Ex. 3, ¶ 6.) All pages contain Plaintiff's signatures. On the upper-left-hand section of one of the pages of Attachment A is the Agreement to Arbitrate. (*See also* Ex. 1 hereto.)

Plaintiff's affidavit, attached as Exhibit 3 to her opposition, states that she "has never seen the document which purports to have my signature on it," referring to Exhibit 1 affixed hereto. (Pl. Aff. ¶ 4.) Plaintiff also states that she "did not sign an agreement for arbitration, discrimination, cash and security, confidential information nor receipt of an employee handbook," presumably referring to the five categories of acknowledgements or agreements contained on Exhibit 1 affixed hereto. (Pl. Aff. ¶ 5.) However, Plaintiff never provides any basis to conclude or even suggest that the five signatures contained on Exhibit 1 are not hers, nor does she even in fact *deny* that the five signatures contained on Exhibit 1 are hers.

Attachment B to Exhibit 3 contains numerous other documents from Plaintiff's personnel file. (Ex. 3, ¶ 7.) Exhibit 4 hereto contains Plaintiff's signature on several documents submitted to the United States Equal Employment Opportunity Commission. Plaintiff's signature on all of these documents is consistent with her signature on the Agreement to Arbitrate section on the personnel file jacket, attached hereto as Exhibit 1 and one of the several pages of Attachment A to Exhibit 3. Plaintiff has offered nothing to dispute that the signatures on Exhibit 1 are hers.

In support of her opposition, Plaintiff submits an affidavit from Malvonnia Knight, who claims to have worked for KFC as a shift manager from 2001 to 2004. Ms. Knight's affidavit is wrought with false statements, making Ms. Knight's credibility extremely questionable. First, Ms. Knight began working for KFC in 2002. (Ex. 3, ¶ 8.) Second, KFC has no position of shift manager. (Ex. 3, ¶ 10.) Rather, KFC employs shift supervisors, who are not members of salaried management; are paid on an hourly basis; are entitled to, and receive, overtime pay; and have no authority to hire or fire. (Ex. 3, ¶ 11.) Third, Ms. Knight held this hourly supervisory position for less than a year. (Ex. 3, ¶ 8-9.)

Ms. Knight's statement that "I have never seen [the personnel file jacket containing the arbitration agreement] and know that no employee was ever asked to sign such a document" is absurd. She cannot possibly make a statement that she

3

*knows* no one was ever asked to sign such a document. Ms. Knight's statement that, to her knowledge, "no employee was ever asked to sign an agreement for arbitration …" is equally incredible, given that *she* signed such an agreement. Attachment C to Exhibit 3 contains Ms. Knight's completed personnel file jacket, including the signed arbitration agreement. (Ex. 3, ¶ 13.) It is clear in comparing Ms. Knight's signature on the affidavit attached to Plaintiff's opposition, to the signatures on Attachment C to Exhibit 3, that they are the same.[2]

The other affidavit Plaintiff proffered in support of her opposition to KFC's motion to compel arbitration was from her mother, Michelene Ralls. (Ex. 5 to Pl. Opp.) Like Ms. Knight, Ms. Ralls states that she has never seen the personnel file jacket attached as Exhibit 1 and knows of no employee who was asked to sign it. While Ms. Ralls' knowledge or lack of knowledge is not at all probative as to whether or not Exhibit 1 contains Plaintiff's signature (and, as her mother, she makes no representations that she does not believe that Exhibit 1 does contain Plaintiff's signature), she, like Ms. Knight, is wrong. Attachment D to Exhibit 3 contains Ms. Ralls' completed personnel file jacket, once again including the signed arbitration agreement. (Ex. 3, ¶ 14.) It is clear in comparing Ms. Ralls' signature on the affidavit attached to Plaintiff's opposition, to the signatures on Attachment D to Exhibit 3, that they are the same.

---

[2] The remaining paragraphs of Ms. Knight's affidavit need no response, as they have no bearing whatsoever on whether or not Plaintiff signed an arbitration agreement.

Plaintiff also offers as support to her opposition to KFC's motion to compel arbitration the fact that "arbitration documents were never discussed during my negotiations with the company before the EEOC while my charge was pending." (Pl. Aff. ¶ 8.) First, and as Plaintiff is aware, KFC did not negotiate directly with Plaintiff regarding her EEOC charge and therefore had no discussions with her. However, upon receipt of this lawsuit, KFC's counsel informed Plaintiff's counsel of the arbitration agreement immediately. Second and more importantly, KFC's arbitration agreement does not preclude, as it cannot, employees or former employees from pursuing any external administrative remedy. Indeed, KFC's Agreement to Arbitrate specifically states that employees who sign the agreement agree "(iii) finally, to pursue to completion any external administrative remedy (such as the Equal Opportunity Commission)." (Ex. 1 hereto.)

Whether or not Plaintiff *intended* to agree to arbitration is not the question. The only question here is whether the signature on Exhibit 1 under the section Agreement to Arbitrate is hers. Plaintiff is responsible for reading language to which she signs her name. KFC has offered credible evidence that the signature is hers: including that the document came from and was stored in Plaintiff's personnel file during KFC's ordinary course of business; that all employees are required to complete the personnel file jackets (and, indeed, KFC provided evidence of completed personnel file jackets by the two former employees who

swore in their affidavits that they had not agreed to arbitrate); and that Plaintiff's signature on Exhibit 1 appears the same as her signature contained elsewhere.

## II. Plaintiff Signed an Arbitration of Employee Rights Agreement on Her Application.

The Agreement to Arbitrate contained on Plaintiff's personnel file jacket, standing alone, requires the Court to dismiss this matter or stay the proceedings and compel arbitration. However, in addition to the Agreement to Arbitrate contained on KFC's personnel file jacket, KFC also requires all applicants to complete and sign its employment application, which *also* contains an arbitration agreement entitled Arbitration of Employee Rights. This Court has previously considered the agreement contained in KFC's employment application and has noted favorably that

> The Agreement section is included just above the employee's signature. Further, it is set off in a box; has a broad black border at the top; and is labeled in all capitals, in reverse color, large type "AGREEMENT." Within the agreement section, there is a subsection, labeled in centered, all capitals letters "ARBITRATION OF EMPLOYEE RIGHTS."

*Bradford v. KFC Nat. Management Co.*, 5 F. Supp. 2d 1311, 1312 (M.D. Ala. 1998). These same safeguards, designed to focus applicants' attention on the Arbitration of Employee Rights section, are contained in Plaintiff's application attached hereto as Exhibit 2.

6

As to her application, Plaintiff acknowledges that she completed an application when she was hired by KFC (Pl. Aff. ¶ 9); Plaintiff does not deny that the signature on the application attached as Exhibit 2 is hers; and Plaintiff does not proffer any reason to believe that such signature is not hers. Rather, Plaintiff simply states that "I do not know any person named 'Thomas Harrell,' who is listed as a reference on the application." (Pl. Aff. ¶ 9.) Presumably, therefore, Plaintiff does recall all of the remaining data on the application and such data is accurate, given her absence of any other qualifying language. Plaintiff also does not deny that anything on the application is not in her handwriting. Indeed, Plaintiff's contention that she does not know anyone named Thomas Harrell leaves open the possibility that she simply placed a name on the application that was fictitious.

Exhibit 2 is the only employment application that was or is contained in Plaintiff's personnel file. Even if the Court accepts Plaintiff's apparent unwritten or unspoken assertion that she did not complete the employment application attached as Exhibit 2, all of KFC's employment applications contain the agreement to arbitrate. (Ex. 3, ¶ 4.) Therefore, if Plaintiff signed *any* KFC employment application, she signed the arbitration agreement.

Again, Attachment B to Exhibit 3 contains numerous other documents from Plaintiff's personnel file (Ex. 3, ¶ 7) and Exhibit 4 hereto contains Plaintiff's

signature on several documents submitted to the United States Equal Employment Opportunity Commission. Plaintiff's signature on all of these documents is consistent with her signature on the Arbitration of Employee Rights section of her employment application, attached hereto as Exhibit 2. Plaintiff has offered nothing to dispute that the signature on Exhibit 2 is hers.

It bears repeating that Congress sought to manifest a federal policy favoring arbitration agreements when it enacted the Federal Arbitration Act. *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002). As a result, arbitration clauses are to be generously construed in favor of arbitration. *Mose H. Cone Mem. Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983); *Ruby-Collins, Inc. v. Huntsville,* 748 F.2d 573, 576 (11th Cir. 1984). Plaintiff's opposition does nothing more than dance around the two binding arbitration agreements that she signed, without ever saying they were not her signatures. These documents – either one of which, standing alone, is sufficient to bind Plaintiff to arbitration – were contained in Plaintiff's personnel file at KFC, and the signatures thereon are consistent with Plaintiff's signatures on other documents.

### III. Even If Plaintiff Did Not Sign These Documents, Her Employment with KFC Was Nonetheless Subject to a Written Arbitration Agreement.

The Eleventh Circuit has recently joined the remaining jurisdictions that have addressed this issue and "readily conclude[d] that no signature is needed to satisfy the FAA's written agreement requirement. First, the plain language of § 2 requires that the arbitration provision be 'written.' It does not, however, require that the agreement to arbitrate be signed by either party; nor does any other provision of the FAA." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005). Thus, even if the Court accepts that Plaintiff has insinuated that she did not sign *either* of the arbitration agreements contained in Exhibits 1 or 2 <u>and</u> the Court accepts such bald veiled denials as credible or sufficient to overcome KFC's evidence to the contrary, the Court may still determine that Plaintiff was subject to an arbitration agreement with KFC.

KFC has an arbitration program that requires employees to arbitrate employment-related claims against it. KFC policies require that all applicants seeking employment with KFC must complete the KFC application, which contains a very visible section binding the applicant and KFC to arbitration of employment-related disputes. (Ex. 3, ¶ 4.) Plaintiff acknowledges that she signed an application for employment with KFC. Therefore, she was on notice of KFC's mandatory arbitration policy and her employment and continued employment was

9

sufficient to establish her consent to the written arbitration contract. *Caley*, 428 F.3d at 1369 (11th Cir. 2005).

While KFC's employment application is sufficient to bind all applicants and employees to its mandatory arbitration agreement, KFC leaves no room for argument of ignorance by again having all new hires complete the personnel file jacket that contains the Agreement to Arbitrate section. (Ex. 3, ¶ 5.) At the top of the file jacket side that contains the important Agreement to Arbitrate, in off-color, centered, stand-alone text, reads: "As an employee of KFC, you have to read the information on this page and sign your name." (Ex. 1.) Thus, employees are again on notice that their employment with KFC is subject to the mandatory arbitration agreement and therefore such agreement is binding.

## IV.   Conclusion

For the reasons contained in KFC's memorandum in support of its Motion, and for the reasons contained herein, KFC respectfully requests that the Court dismiss this lawsuit in its entirety or, in the alternative, stay these proceedings and compel arbitration of this matter.

Respectfully submitted this 27th day of March, 2006.

> */S/ Kira Y. Fonteneau*
> Kira Y. Fonteneau (ASB-7338-K58F)
> E-mail: kfonteneau@constangy.com
> CONSTANGY, BROOKS AND SMITH, LLC
> Suite 900, One Federal Place
> 1819 Fifth Avenue North
> Birmingham, AL 35203
> Telephone:  (205) 252-9321
> Facsimile:   (205) 323-7674
>
> **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that the undersigned electronically filed the foregoing reply memorandum using the CM/ECF system that will send notification of such filing to the following:

> PRISCILLA BLACK DUNCAN
> P.B. DUNCAN & ASSOCIATES, LLC
> 472 SOUTH LAWRENCE STREET SUITE 204
> MONTGOMERY, AL 36104
>
> ALICIA KAY HAYNES
> HAYNES & HAYNES, PC
> 1600 WOODMERE DRIVE
> BIRMINGHAM, AL 35226

This 27th day of March, 2006

> */s/ Kira Fonteneau*
> Kira Fonteneau ASB-7338-K58F